1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    JOSEPH OCHOA,                          Case No. 3:21-cv-04008-JD

              Petitioner,

8

9         v.                                **ORDER RE HABEAS PETITION,
                                            EVIDENTIARY HEARING, AND
10   TAMMY L. CAMPBELL,                      CERTIFICATE OF APPEALABILITY**

              Respondent.

11

12

13        Petitioner Joseph Ochoa, a California state prisoner, alleges multiple claims for habeas

14   relief under 28 U.S.C. § 2254.  Dkt. Nos. 1, 22.  A magistrate judge directed respondent to show

15   cause why the writ should not be granted.  Dkt. No. 7.  Respondent filed an answer, Dkt. No. 27,

16   and Ochoa filed a traverse, Dkt. No. 42.  The petition is denied.

17                              **BACKGROUND**

18        The California Court of Appeal provided a detailed account of the material facts and trial

19   proceedings.  *See People v. Ochoa*, No. A153105, 2020 WL 593998 (Cal. Ct. App. Feb. 6, 2020);

20   Dkt. No. 28-18.  It summarized the evidence presented at trial:

21        "*Prosecution Case*

22        Jane Doe was 18 years old when she testified at trial.  When she was seven, in 2005 or

23        2006, appellant began dating her mother and, a couple of months later, moved into their

24        house.  Appellant and Doe's mother separated in 2013.  Starting when Doe was seven or

25        eight years old and continuing until she was 13 or 14 years old, appellant sexually

26        molested her.  Doe testified to numerous specific incidents of molestation over the years.

27        She did not tell anyone while it was happening because she was afraid of appellant, who

28        sometimes hit her with his belt or hand or yelled at her with a 'scary look' on his face, and

also because she was afraid of hurting her mother.  In 2014, after appellant and Doe's mother separated, Doe told her then-boyfriend about the molestation.  A year later, she told her father, who persuaded her to talk to the police.

Doe's mother testified about her relationship with appellant.  She described specific periods where appellant would have been regularly alone with Doe:  for various periods, appellant was not working because of an injury or unemployment; for less than a year he worked part-time, about three days per week; and another job had appellant regularly home from work in the early or mid-afternoon.  During this entire time, Doe's mother worked full-time and arrived home between 5:00 p.m. and 6:45 p.m.  Although Doe sometimes had sports practices or games and was not home when her mother got home, it was not uncommon that she would already be home.  Appellant's son from his previous marriage, Anthony Ochoa, who Doe testified was about three months younger than she was, lived with them around two days a week and every other weekend.  Doe's mother and appellant had two daughters during their relationship.

An expert in child sexual abuse and Child Sexual Abuse Accommodation Syndrome (CSAAS) testified.  CSAAS describes a pattern of events or behaviors that tend to occur in cases of child sexual abuse.  It is an educational tool originally designed to help therapists treating child sexual abuse victims by dispelling misperceptions the therapists may have held about how victims would act.  One component of CSAAS is secrecy:  victims of child sexual abuse may be afraid of disclosing the abuse because of explicit or implicit threats.  Another component is delayed disclosure:  children may disclose the sexual abuse long after it happened.

*Defense Case*

Appellant testified in his own defense.  During appellant's relationship with Doe's mother, he coached Doe in sports and pushed her to succeed so she could get a college scholarship.

When he and Doe's mother first separated, Doe cried hysterically and said she did not want her family to break up (Doe and her mother both testified on cross-examination that Doe cried at this separation). After the separation, appellant stopped paying for or being involved with Doe's sports. Appellant denied molesting Doe and denied being alone with her as often as she and her mother testified, although he admitted having been home alone with her on some occasions.

Lisa Farris, a probation officer supervisor, testified that she had known appellant and Doe for seven or eight years. She saw them at her son's basketball games or at Macy's, where Farris worked part-time. In her work as a probation officer, Farris was trained to notice if a child appeared sad or withdrawn. When Farris saw Doe with appellant, she was always happy and never looked sad or withdrawn.

An expert in the critical analysis of CSAAS testified. Each component of CSAAS can occur in a case of actual child sexual abuse, but can also occur in a false allegation case. CSAAS is misleading because it suggests the presence of its components means child sexual abuse occurred; in fact, the components could be explained by other reasons."

*Ochoa*, 2020 WL 593998, at *1-2 (footnotes omitted).

A jury convicted Ochoa of two counts of lewd acts on a child under the age of 14 years, Cal. Penal Code § 288(a); two counts of sexual intercourse with a child 10 years of age or younger, *id.* § 288.7(a); two counts of sexual penetration with a child 10 years of age or younger, *id.* § 288.7(b); one count of continuous sexual abuse with a child under the age of 14 years, *id.* § 288.5(a); and one count of lewd acts on a child of 14 years, *id.* § 288(c)(1). *See* Dkt. No. 28-3 at ECF pp. 193-200 (3CT at 591-98); Dkt. No. 28-4 at ECF pp. 194-95 (4CT at 792-93). After the verdict, Ochoa filed a motion for a new trial, contending that trial counsel provided ineffective assistance and requesting an evidentiary hearing. *See* Dkt. No. 28-4 at ECF p. 79 (4CT at 677); Dkt. No. 28-8 at ECF p. 173 (4RT at 1307). The trial court denied the requests and found that trial counsel's performance was not deficient. *See* Dkt. No. 28-8 at ECF pp. 176, 217-18 (4RT at 1310,

3

1351-52).  Ochoa was sentenced to an aggregate term of 96 years and eight months to life.  *See* Dkt. No. 28-4 at ECF p. 193 (4CT at 791).

Ochoa filed a direct appeal as well as a companion habeas petition in the California Court of Appeal.  Dkt. Nos. 28-11, 28-14.  The habeas petition was mostly duplicative but raised an additional claim that defense counsel was ineffective for failing to investigate and present a "*Stoll* expert," that is, "an expert witness on the issue of whether [Ochoa] was sexually attracted to children."  Dkt. No. 22 at p-25; *see also* Dkt. No. 28-14 at ECF p. 57.  The California Court of Appeal affirmed Ochoa's convictions and denied his habeas petition without issuing an order to show cause or directing the taking of any additional evidence.  Dkt. Nos. 28-18, 28-19.

Ochoa filed petitions for review in the California Supreme Court of both decisions.  Dkt. Nos. 28-20, 28-21.  With respect to the habeas petition, the California Supreme Court requested respondent to provide an answer as to whether Ochoa had established a prima facie case for relief, and invited respondent "to secure a declaration from trial counsel."  Dkt. No. 28-22 at ECF p. 2.  Respondent filed an answer along with what is ostensibly an affidavit from Ochoa's trial counsel, Patrick Clancy.  Dkt. Nos. 28-23, 28-24.  Ochoa filed a reply with declarations from his son, Anthony Ochoa, and his father, Joseph Ochoa Sr.[1]  Dkt. No. 41-1.  The California Supreme Court summarily denied both petitions for review on May 27, 2020.  Dkt. Nos. 28-25, 28-26.

After reaching the end of the road in state court, Ochoa filed his original federal habeas petition on May 26, 2021, followed by an amended petition on May 27, 2021.  Dkt. Nos. 1, 6.  Respondent moved to dismiss the petition for failure to exhaust all claims.  Dkt. No. 13.  Ochoa then filed a second amended petition that removed his unexhausted Eighth Amendment claim, Dkt. No. 22, which he acknowledged had been "erroneously included in the federal habeas corpus petition," Dkt. No. 20 at 1.[2]

---

[1] To avoid confusion, Anthony and Joseph Sr. will be referred to by their first names.

[2] Ochoa says that he "abandoned the Eighth Amendment claim in the California Supreme Court because the California Department of Corrections had set a November 2041 parole consideration date for [him], despite his sentence of 96 years, eight months to life."  Dkt. No. 20 at 1.

United States District Court
Northern District of California

1         In the main, Ochoa's second amended petition claims that his trial counsel was ineffective,

2   in violation of his Sixth Amendment right to the effective assistance of counsel.  *See* Dkt. No. 22

3   at p-36.  The petition also claims that Ochoa was denied a reasonable opportunity to develop the

4   factual record in state court, and that this Court should hold an evidentiary hearing.  *See id.* at p-

5   37.  Respondent acknowledges, and the record reflects, that Ochoa's claims are exhausted and that

6   his habeas petition is timely.  *See* Dkt. No. 27 at 2.

7   **LEGAL STANDARDS**

8         Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a state

9   court decides a claim on the merits, habeas relief can be granted only if the state court decision (1)

10  "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

11  determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

12  determination of the facts in light of the evidence presented in the State court proceeding."  28

13  U.S.C. § 2254(d)(1) and (2); *see also Demacedo v. Koenig*, No. 19-cv-05815-JD, 2022 WL

14  4280643, at *1-2 (N.D. Cal. Sept. 15, 2022); *Garcia v. Lizarraga*, No. 19-cv-02083-JD, 2021 WL

15  242880, at *2 (N.D. Cal. Jan. 25, 2021).  The first prong applies both to questions of law and to

16  mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), and the second

17  prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322,

18  340 (2003).  *See Chandra v. California*, No. 16-cv-06076-JD, 2022 WL 6144269, at *3 (N.D. Cal.

19  Oct. 7, 2022).

20        A state court decision is "contrary to" Supreme Court authority if "the state court arrives at

21  a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

22  court decides a case differently than [the Supreme] Court has on a set of materially

23  indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

24  application of" Supreme Court authority if it correctly identifies the governing legal principle from

25  the Supreme Court's decisions but "unreasonably applies that principle to the facts of the

26  prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply

27  because that court concludes in its independent judgment that the relevant state-court decision

28

applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the

application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

A state court decision "based on a factual determination will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state-court

proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir.

2000).  The Court presumes the correctness of the state court's factual findings, and the petitioner

bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C.

§ 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of

the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see also Barker v. Fleming*, 423

F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest state

court that considered the petitioner's claims, the Court looks to the last reasoned opinion from a

lower court.  *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079

n.2 (9th Cir. 2000).  "However, in rare instances, the record may have been 'materially improved'

between the issuance of the reasoned opinion [by the lower court] and the unexplained order [by

the highest state court]." *Ybarra v. Filson*, 869 F.3d 1016, 1028 (9th Cir. 2017) (quoting *Cannedy

v. Adams*, 706 F.3d 1148, 1156 n.3 (9th Cir. 2013)).  In this situation, the inquiry under Section

2254(d) "is whether, in light of the evidence before the California Supreme Court -- the last state

court to review the claim -- it would have been reasonable to reject Petitioner's allegation of

[ineffective assistance of counsel] for any of the reasons expressed by the court of appeal."

*Cannedy*, 706 F.3d at 1159.

Ultimately, a federal court "shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  Consequently, a petitioner is not necessarily entitled to relief just because a state

court's decision does not satisfy Section 2254(d).  *See, e.g.*, *Wilson v. Corcoran*, 562 U.S. 1, 5-6

(2010) (explaining that Section 2254(d) "does not repeal the command of § 2254(a) that habeas

relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal

law"); *Hardy v. Chappell*, 849 F.3d 803, 820 (9th Cir. 2016) (examining petitioner's constitutional claim de novo under Section 2254(a) where the petition satisfied the "contrary to" clause of Section 2254(d)(1)).  The Court can deny a habeas petition under § 2254 "by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

**I.      INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment guarantees effective assistance of counsel to defendants in criminal cases.  *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The benchmark for a claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a just result.  *See id.*

To prevail on a Sixth Amendment ineffectiveness claim, Ochoa must first demonstrate that defense counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms.  *Id.* at 687-88; *see also Davidson v. Arnold*, No. 16-cv-03298-JD, 2020 WL 1332096, at *5 (N.D. Cal. Mar. 23, 2020).  Second, he must establish that he was prejudiced by the deficient performance in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In addition, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  The *Strickland* prejudice analysis is complete in itself, and there is no need for harmless error review under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

On habeas review, the Court defers to defense counsel's tactical choices, and the state court's determination of whether those choices were reasonable.  *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (review is "doubly deferential when it is conducted through the lens of federal habeas"); *see also Zapata v. Vasquez*, 788 F.3d 1106, 1115 (9th Cir. 2015); *Davidson*, 2020 WL 1332096, at *8.  The Court looks to whether "it would have been reasonable to reject [Ochoa's]

1    allegation of deficient performance for any of the reasons expressed by the court of appeal."

2    *Cannedy*, 706 F.3d at 1159.  "[B]ecause of the difficulties inherent in making the evaluation, [the

3    Court] must indulge in a strong presumption that counsel's conduct falls within the wide range of

4    reasonable professional assistance; that is, [Ochoa] must overcome the presumption that, under the

5    circumstances, the challenged action might be considered sound trial strategy." *Tilcock v. Budge*,

6    538 F.3d 1138, 1146 (9th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689).  At bottom, the Court

7    "may grant relief only if every fairminded jurist would agree that every reasonable lawyer would

8    have made a different decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (per curiam)

9    (cleaned up).

10        Ochoa raises seven different grounds for his claim that trial counsel was ineffective.  He

11   says that (1) counsel failed to adequately investigate Ochoa's son, Anthony, and present his

12   testimony; (2) counsel unreasonably decided not to seek a continuance of trial, which would have

13   allowed him to present Anthony's testimony; (3) counsel unreasonably decided (a) to not object to

14   the prosecutor's closing argument about Anthony not being called as a witness and (b) to not

15   remove two allegedly prejudiced jurors; (4) counsel failed to present the testimony of character

16   witnesses other than Lisa Farris; (5) counsel failed to investigate and present a *Stoll* defense; (6)

17   counsel presented ineffective closing argument; and (7) the cumulative effect of the preceding

18   errors was to deny Ochoa the effective assistance of counsel.  *See* Dkt. No. 22 at p-36-37.  Except

19   for ground (5), all of these claims of ineffective assistance were expressly considered and rejected

20   by the California Court of Appeal in Ochoa's direct appeal.

21        As an initial matter, Ochoa's petition makes almost no effort whatsoever to show that the

22   state court's adjudication of his ineffective assistance claims "resulted in a decision that was

23   contrary to, or involved an unreasonable application of, clearly established Federal law, as

24   determined by the Supreme Court of the United States," or that it "resulted in a decision that was

25   based on an unreasonable determination of the facts in light of the evidence presented in the State

26   court proceeding."  28 U.S.C. § 2254(d)(1), (2).  In his traverse, Ochoa suggests in passing that the

27   California Court of Appeal -- the court that issued the last reasoned decision -- issued a decision

28   that was based on an unreasonable determination of the facts simply because it lacked the benefit

United States District Court
Northern District of California

8

of the declarations that trial counsel and others subsequently submitted to the California Supreme Court.  *See* Dkt. No. 42-1 at 3.  Otherwise, his papers ignore how the state court disposed of his claims.

Ochoa is mistaken in the view that he could circumvent the Section 2254(d) bar without any meaningful discussion of the state court's reasoning or the facts that it determined.  Although the last reasoned decision was rendered by the California Court of Appeal, it is the California Supreme Court's decision that is under scrutiny, and its decision was made with a full and complete record before it.  *See Cannedy*, 706 F.3d at 1159 n.5 ("We are reviewing the reasonableness of *the California Supreme Court's decision* by the evidence that *was* before it, and we are using the Court of Appeal's reasoning in accordance with our usual practice of 'looking through' summary denials to the last reasoned decision.") (emphasis in original).  The Ninth Circuit's decision in *Cannedy* expressly contemplated that the record could materially improve between the issuance of the last reasoned decision by a state's intermediate appellate court and a summary denial by its highest court, and that the Section 2254(d) inquiry would shift focus -- not that Section 2254(d) would evaporate into thin air.[3]  *See id.*; *see also Ochoa v. Davis*, 50 F.4th 865, 888 (9th Cir. 2022) ("[T]he California Supreme Court's summary denial of [petitioner's]

---

[3] In *Cannedy*, the petitioner filed a direct appeal from his convictions and a separate habeas petition in the California Court of Appeal, like Ochoa did here.  *See Cannedy*, 706 F.3d at 1154.  "After the California Court of Appeal denied Petitioner's appeal and petition, Petitioner filed a petition for review and a mostly duplicative petition for a writ of habeas corpus in the California Supreme Court."  *Id.*  Ochoa, by contrast, did not file an original habeas petition in the California Supreme Court.

The procedural distinction is immaterial to the disposition of Ochoa's petition.  It is true that "a discretionary denial of leave to appeal does not typically entail an 'adjudication' of the underlying claim's 'merits' under AEDPA's terms."  *Brown v. Davenport*, 142 S. Ct. 1510, 1529 (2022).  But in this case, there is an explicit indication that the California Supreme Court's summary denial of Ochoa's petition for review resolved the question of "[w]hether petitioner has established a prima facie case for relief."  Dkt. No. 28-22 at ECF p. 2.  That is the same question resolved by the California Supreme Court's summary denial of an original habeas petition.  *See Pinholster*, 563 U.S. at 188 n.12 ("Under California law, the California Supreme Court's summary denial of a habeas petition on the merits reflects that court's determination that the claims made in the petition do not state a prima facie case entitling the petitioner to relief.") (cleaned up).  Consequently, the California Supreme Court's summary denial of Ochoa's petition for review in his habeas case is properly treated as an adjudication on the merits for purposes of Section 2254(d).  Even if this were not the case and Ochoa was entitled to de novo review for all the claims in his petition, he has not carried his burden of showing that trial counsel rendered ineffective assistance, for the reasons discussed in this order.

United States District Court
Northern District of California

claims . . . is a decision on the merits and thus entitled to AEDPA deference.").  In addition, as the habeas petitioner, Ochoa "carries the burden of proof" to show that Section 2254(d) should not apply to preclude habeas relief.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  He cannot discharge that burden simply by pointing to the fact that the California Supreme Court solicited additional evidence before summarily denying review of the denial of his habeas petition.

In effect, Ochoa's Section 2254 petition asks the Court to engage in a de novo review of his ineffective assistance claims, without making a serious effort to show that he entitled to such review.  Most, if not all, of Ochoa's claims are properly denied on this basis alone.  To hold otherwise would be to deny effect to the limitations on habeas relief set forth by Congress in AEDPA, and ignore the Supreme Court's admonition that "federal habeas review cannot serve as 'a substitute for ordinary error correction through appeal.'"  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Richter*, 562 U.S. at 102-03); *see also id.* ("The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'") (quoting *Richter*, 562 U.S. at 102).  Nonetheless, for the sake of completeness, the Court will consider each of Ochoa's claims of ineffective assistance.

### A.    Grounds 1 and 2:  Testimony of Anthony Ochoa

Ochoa's lead argument is that trial counsel failed to adequately investigate and present the testimony of his son, Anthony Ochoa.  *See* Dkt. No. 22 at m-4, m-10.[4]  Ochoa says that had Anthony been called as a witness, he would have (1) "rebutted the prosecution's claim that [Doe] was sexually naïve," (2) "shown appellant's character and lack of propensity to commit the crimes," (3) "testified about the lack of inappropriate behavior, and contradicted [Doe's] testimony about allegedly suspicious hotel and traveling arrangements involving her," (4) "testified that [Doe] had a history of lying," and (5) "shown [Doe's] bias and motive for testifying falsely, that she was angered and jealous because appellant had abandoned her mother in favor of a new girlfriend."  *Id.* at m-10-13.  Ochoa also contends that his trial counsel's decision not to have Anthony testify turned Anthony into a "silent witness for the prosecution" and that counsel's

---

[4] The "m-4" and "m-10" citations refer to Ochoa's page numbering format and the Memorandum of Points and Authorities section of his petition.  *See* Dkt. No. 22.

United States District Court
Northern District of California

decision to "block[] a trial continuance in exchange for foregoing Anthony's testimony was not reasonable." *Id.* at m-13-14.

### 1. Background

The California Court of Appeal provided additional background regarding trial counsel Clancy's investigation of Anthony, his decision not to present Anthony's testimony, and his efforts to exclude late-disclosed incriminating evidence:

> "In December 2016, the day after the jury was selected and the day before opening statements were scheduled to begin, appellant brought a motion to exclude certain prosecution evidence. Due to an apparent mistake or oversight, the People had failed to provide to the defense a police report describing a 2015 interview with Anthony and Anthony's mother (appellant's ex-wife), until the parties were arguing in limine motions. The police report documented a statement from Anthony's mother that in 2008 or so, Anthony came home to his mother's house with a cell phone that he said appellant gave him. His mother looked through the phone and found a 'close-up nude photograph of a child's buttocks.' Anthony told his mother that appellant took the pictures while he, appellant, and Doe were playing a game in which one person pulled down another's pants. Anthony's mother subsequently gave the phone to appellant's father.

> At the hearing, appellant's trial counsel first argued the evidence was of questionable reliability. Following receipt of this report, appellant's investigator spoke to Anthony, who admitted he and Doe had played the game and taken photographs, but said appellant was not present. Trial counsel also represented that Doe told child abuse investigators appellant never took pictures of her, and that appellant would deny the photograph incident in his testimony at trial.

> Trial counsel argued that if evidence about the photograph were introduced at trial, he would need to show where Doe 'got sexual knowledge to be engaged in the sex play of taking down her pants and Anthony's pants' and that the 'sexual knowledge . . . did not

come from my client; that [it] predated my client knowing her.'  Counsel represented that there was a potential witness who could provide such evidence:  Doe's mother told appellant that, before appellant met Doe, Doe was caught multiple times engaged in sexual activity with a cousin named Marcelo.  Marcelo worked out of state and counsel could not conduct an investigation or obtain a subpoena in time for the trial.

Trial counsel also discussed his prior decision, before learning about the police report, not to call Anthony at trial, even though Anthony told counsel he and Doe had been sexually involved, because at that point 'what was relevant is [Doe's] sexual knowledge, to be able to make up such a story, and she would have been 15 at the time.  I felt she's old enough to know what is in this allegation that she has made.'  Because counsel determined that a victim '15 years and older would know sexual details,' he had previously determined 'there was no need for a[n Evidence Code section] 782 motion based upon the information that we had, even though we knew that [Doe] was sexually active.'

Counsel noted, 'Prior to all of this coming up, the DA and I had discussed we both wanted this case tried before Christmas for our own reasons, and one of the reasons I had was that I was booked up through March, and if this got continued again, we are looking at April before I have any open time.'  Counsel concluded, 'I would ask that this trial proceed and that the statement about a photograph being found and the hearsay statement be excluded.  Otherwise, we would need a four-month continuance.  My client has virtually spent all of his money.  He doesn't have the money to start over.  I think that it would be in the best interest of justice that we go forward with this trial and without that evidence.'

The prosecutor argued the trial should be continued, noting appellant was out of custody and 'facing very serious charges, and we're talking about a key piece of evidence for the People.'  The prosecutor emphasized 'the importance that . . . justice be done in a case, and that the jury hear the evidence, and that the Defendant not be able to benefit to the degree

he may in this case if this becomes an acquittal because of this lack of evidence because of an error of this nature.'

The trial court characterized the statements in the police report as 'very, very important evidence against the Defendant' and found that, because of the late discovery, appellant lacked adequate time to investigate and prepare a response.  The court denied the People's request for a continuance and instead ordered, as a sanction, the exclusion of any evidence regarding the matter contained in the police report, including as rebuttal in the event that appellant testified and denied molesting Doe.  The court also ruled that if Anthony testified and contradicted Doe's testimony, the prosecutor could impeach Anthony with the matter contained in the police report.

When appellant filed his post-verdict motion for a new trial, he attached three investigator reports documenting pretrial interviews with Anthony.  Anthony told the investigator he never saw any inappropriate sexual behavior between appellant and Doe.  He also reported he and Doe had been sexually active, starting when Anthony was ten years old and Doe was eleven and continuing as they got older.  Anthony said, with respect to at least the earlier incidents, Doe was the initiator and pressured Anthony into engaging in them.  Anthony believed Doe made up the accusations to prevent appellant from moving on after he and Doe's mother separated.

In addition, the trial court accepted as an offer of proof representations of statements Anthony made to appellant's new counsel, as described in appellant's new trial papers.  The court also accepted as an offer of proof counsel's representation that appellant's father stated he never received a cell phone from Anthony's mother."

*Ochoa*, 2020 WL 593998, at *3-4.

The California Court of Appeal proceeded to reject Ochoa's contentions that trial counsel rendered ineffective assistance in investigating Anthony and not presenting his testimony.  It first

addressed Ochoa's claim that counsel "failed to seek a continuance of the trial [to present Anthony's testimony] due to a conflict of interest." *Id.* at \*5. The court explained:

> "Both the United States Constitution and the California Constitution guarantee criminal defendants the right to the assistance of counsel unburdened by any conflicts of interest. Essentially, a claim of conflict of interest constitutes a form of ineffective assistance of counsel. In order to demonstrate a violation of the federal and state constitutions based on a conflict of interest, a defendant must show that his or her counsel was burdened by an 'actual' conflict of interest -- one that in fact adversely affected counsel's performance. When determining whether counsel's performance was 'adversely affected' by the purported conflict under this standard, we consider whether counsel pulled his punches, i.e., whether counsel failed to represent defendant as vigorously as he might have, had there been no conflict. This analysis will often turn on choices that a lawyer could have made, but did not make. In order to determine whether those choices resulted from the alleged conflict of interest, we must analyze the record to determine whether a lawyer who did not face the same conflict would have made different choices as well as whether counsel's choices were the product of tactical reasons rather than the alleged conflict of interest.
>
> Appellant points to trial counsel's arguments that (1) counsel and the prosecutor previously discussed wanting 'this case tried before Christmas for our own reasons, and one of the reasons I had was that I was booked up through March, and if this got continued again, we are looking at April before I have any open time'; and (2) 'my client has virtually spent all of his money. He doesn't have the money to start over.' From this, appellant argues trial counsel's decision not to seek a continuance was motivated by trial counsel's belief 'that he couldn't get any more money from appellant and he wanted to get the trial over with.'
>
> Even assuming a conflict was present, the record does not reveal that it affected counsel's performance. The record before us plainly indicates there was a proper tactical reason for

United States District Court
Northern District of California

trial counsel's decision not to seek a continuance:  if the trial were not continued, the trial

court would likely exclude the damaging evidence contained in the late-disclosed police

report, and the benefits of this exclusion outweighed any advantages of continuing trial.

This was an eminently reasonable strategy that would likely have been adopted by

nonconflicted counsel.  Because the record does not show that a different strategy would

likely have been adopted by competent, unconflicted counsel, it fails to demonstrate either

conflict-driven adverse performance, or ineffective assistance, on counsel's part."

*Id.* (cleaned up).

After rejecting Ochoa's claim of ineffective assistance based on a conflict of interest, the

Court of Appeal turned to the substance of Ochoa's complaints vis-à-vis Anthony:

"As is apparent from trial counsel's comments at the hearing, before learning about

Anthony's mother's statement about the photograph, counsel considered the primary

relevance of evidence of Doe's sexual history to bear on the credibility of her disclosure of

the abuse.  Counsel reasoned that, if disclosure came from a younger child who would not

otherwise know about the type of sexual conduct described in the disclosure, evidence of

sexual conduct other than with the alleged perpetrator could provide an alternative

explanation for this knowledge.  However, Doe was 15 at the time of disclosure and

counsel reasonably determined that a victim of this age would independently know about

the type of sexual conduct she described, and there was therefore no need to present

Anthony as a witness or attempt to contact Marcelo.  This is a reasonable tactical decision.

Appellant argues Anthony's testimony could have been used for a number of other

purposes:  appellant's character, Anthony's observation of no inappropriate behavior

between Doe and appellant; Doe's history of lying 'to get herself out of trouble'; Doe's

'sexual sophistication' in contrast to her apparent naivety, which the prosecutor argued

bolstered her credibility; and Doe's feelings of abandonment when appellant left her

mother.  There are reasonable tactical bases for trial counsel to decide against presenting

Anthony's testimony for these possible uses.  Most notably, trial counsel could have

United States District Court
Northern District of California

reasonably determined the jury would consider Anthony -- appellant's son -- a biased witness.  Counsel could also have reasonably concluded it was more likely the jury would be put off by his testimony of Doe's prior sexual conduct than that it would rely on such testimony to find her not credible.  Counsel could reasonably have decided testimony that Anthony saw no inappropriate conduct between appellant and Doe was of minimal value because Anthony was only with appellant part-time, and testimony that Doe lied to get herself out of trouble was similarly unhelpful because there was no evidence that but for Doe's disclosure she would have been in trouble.  In addition, after the trial court excluded the late-disclosed evidence, trial counsel had even more reason not to call Anthony as a witness:  the trial court ruled that if Anthony testified and contradicted Doe's testimony, the prosecution could impeach him with the evidence contained in the police report.  Trial counsel could reasonably determine it was preferable to ensure that the evidence about the photograph remain excluded than to present Anthony's testimony.

As noted above, on the record before us, trial counsel's strategy in response to learning about the late-disclosed police report was to attempt to exclude the damaging evidence contained in the report by persuading the court it was too late for appellant to prepare responsive evidence and that exclusion was preferable to delaying the trial.  Appellant disagrees with this strategy, including with trial counsel's assessment of how damaging the late-disclosed evidence was, but we decline to second-guess trial counsel's tactics.  We note that the trial court, in excluding the evidence, characterized it as 'very, very important evidence against the Defendant,' and that trial counsel could reasonably be concerned about whether Marcelo would in fact provide helpful testimony.  Trial counsel's strategy was not unreasonable.

In sum, we conclude appellant has failed to demonstrate his trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms."

*Id.* at *6-7 (internal quotations, citations, and footnotes omitted).

1

2.      **Discussion**

2      Ochoa's concerns about trial counsel Clancy's investigation of Anthony fall well short of

3      demonstrating that Clancy rendered ineffective assistance.  To start, Ochoa acknowledges that

4      Clancy had his investigator interview Anthony in October 2016, two months before trial.  *See* Dkt.

5      No. 22 at m-4.  The possibility that the investigator's interview may have been "incomplete" in

6      that it did not unearth every bit of plausibly relevant information that Ochoa's present counsel was

7      later "able to get" from Anthony, *id.* at m-5, does not show that Clancy's performance was

8      deficient.  The same goes for the possibility that Clancy did not personally speak with Anthony.[5]

9      "The fact that trial counsel did not personally interview each witness does not constitute

10     ineffective assistance."  *LaGrand v. Stewart*, 133 F.3d 1253, 1274 (9th Cir. 1998).

11     Ochoa complains that Clancy was not familiar with the results of his own investigator's

12     interview with Anthony -- at least, not in time to file a California Evidence Code Section 782

13     motion to "permit Anthony's testimony about [Doe's] sexual activities," Dkt. No. 22 at m-8 -- but

14     his complaint is based on a strained reading of a statement made by Clancy at trial.  In explaining

15     why he did not make a Section 782 motion to have Anthony testify, Clancy said that "what would

16     have been an issue is [Doe's] knowledge to be able to fabricate a story, and she was 15 or older,

17     and I believe 15 years and older would know sexual details."  Dkt. No. 28-5 at 60 (1RT at 457).

18     Ochoa construes this to mean that Clancy mistakenly believed that Doe was around 15 years old

19     when she engaged in sexual conduct with Anthony.  *See* Dkt. No. 22 at m-5, m-7, m-9.  The

20     California Court of Appeal concluded otherwise:  "Appellant contends trial counsel mistakenly

21     thought Doe was 15 or older when she and Anthony engaged in sexual conduct; however, it is

22     clear that trial counsel's comments about Doe being 15 years or older related to her age at the time

23     she disclosed appellant's sexual abuse."  *Ochoa*, 2020 WL 593998, at *6 n.8.  Ochoa has provided

24

25

26     ──────────────

27     [5] Clancy said that he spoke with Anthony.  *See* Dkt. No. 28-24 ¶ 27 ("I decided to talk to Anthony personally to see if he could give unbiased testimony.  It became clear from our discussion that he would do whatever it took to help his father.").  Ochoa's present counsel obtained a declaration from Anthony which stated that he never spoke with Clancy.  *See* Dkt. No. 41-1 at ECF p. 24 ("I never talked to Mr. Clancy at all, either on the phone or in person.").

28

United States District Court
Northern District of California

1    nothing to call into question the state court's assessment, having opted to ignore the state court's

2    analysis entirely.

3           For Clancy's decision not to present Anthony's testimony, Ochoa has not demonstrated

4    that the state court's rejection of his related ineffective assistance claim resulted in a decision that

5    was contrary to, or involved an unreasonable application of, clearly established federal law, or that

6    it was based on an unreasonable determination of the facts in light of the evidence before it.  *See*

7    28 U.S.C. § 2254(d).  As the California Court of Appeal explained, there were reasonable tactical

8    bases for trial counsel to decide against presenting Anthony's testimony for the uses that Ochoa

9    now deems critical.  For instance, Ochoa stands by his position that "Anthony's testimony on Jane

10   Doe's prior sexual activity would also have been extremely relevant. . . . With Anthony's

11   testimony, reasonable jurors would likely have concluded that [Doe] was deceptively trying to

12   appear more naive and childlike than she actually was."  Dkt. No. 22 at m-10-11.  But the

13   California Court of Appeal determined that Clancy could have reasonably concluded that jurors

14   would have reacted negatively to this testimony and considered Anthony a biased witness.  *See*

15   *Ochoa*, 2020 WL 593998, at *6-7.  Ochoa offers no response to this determination.  Ochoa cannot

16   secure the extraordinary remedy of federal habeas relief by ignoring how the state court

17   adjudicated his claim and simply repeating his already-rejected arguments.

18          This leaves Ochoa's claim that, due to a conflict of interest, Clancy blocked the

19   prosecutor's request for continuance that would have allowed Clancy to present Anthony's

20   testimony at trial.  *See* Dkt. No. 22 at m-14-16.  "In order to establish a violation of the Sixth

21   Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict

22   of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348

23   (1980).  The California Court of Appeal assumed that a conflict was present but held that "the

24   record does not reveal that it affected counsel's performance," noting that "if the trial were not

25   continued, the trial court would likely exclude the damaging evidence [from the photograph

26   incident] contained in the late-disclosed police report, and the benefits of this exclusion

27   outweighed any advantages of continuing trial."  *Ochoa*, 2020 WL 593998, at *5.  The court

28   found that Clancy's strategy was "eminently reasonable" and "would likely have been adopted by

United States District Court
Northern District of California

18

1    nonconflicted counsel." *Id.* While Ochoa speculates that the late-disclosed evidence would not

2    have been damaging unless Doe also testified that Ochoa was involved in a picture-taking

3    incident, *see* Dkt. No. 22 at m-16, federal habeas relief is unavailable as "'fairminded jurists could

4    disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting

5    *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

6        **B.**    **Ground 3(a):  Prosecutor's Closing Argument re Anthony**

7        Ochoa says that trial counsel Clancy was ineffective by making a "tactical decision to

8    avoid a mistrial after the close of evidence by not objecting to prejudicial closing argument about

9    what Anthony would have said." Dkt. No. 22 at m-17.

10       **1.**    **Background**

11       Ochoa argued before the California Court of Appeal that Clancy was ineffective for failing

12   to object to the following remarks made by the prosecutor in closing argument:

13       "[T]here's almost no evidence that was presented that would disprove that these sexual

14       assaults occurred.  There's no evidence, for instance, that [Doe] has a history of making up

15       lies, certainly of lies of any magnitude, let alone this magnitude.  You didn't hear from

16       somebody who might have been able to cast some light.  Anthony Ochoa didn't come in

17       and testify.  According to the Defendant, he was there a lot.  If somebody could testify

18       about these things, about what did and didn't happen, maybe Anthony Ochoa could, but

19       you didn't hear from him.  I think you could reasonably assume he would have

20       information."

21   Dkt. No. 28-8 at ECF pp. 29-30 (4RT at 1163-64).  Clancy did not object to these remarks.  But he

22   did confront them as part of his closing argument:

23       "Now, the prosecution brought up we didn't call Anthony.  Well, there's two things.  [Doe]

24       said no one ever saw anything.  So if he comes up and says no one ever saw anything, what

25       have you learned?  Nothing.  More importantly, I don't have a burden.  I don't have to call

26       anybody.  And here is for both of us neither side is required to call as witnesses all persons

27       who may have been present at any of the events disclosed by the evidence or who may

28       appear to have some knowledge of these events."

United States District Court
Northern District of California

*Id.* at ECF p. 49 (4RT at 1183).

In Clancy's statement to the California Supreme Court, he briefly elaborated on his reaction to the prosecutor's closing remarks, and why he approached them the way he did:

> "I was angered by the prosecution's argument about Anthony not being called to testify. However, I made the decision to not draw more attention to it by asking for a corrective instruction. The bell could not be un-rung. I didn't not [*sic*] want a mistrial. It crossed my mind that the DA may be trying to provoke a mistrial."

Dkt. No. 28-24 at ECF p. 8.

### 2. Discussion

The California Court of Appeal considered and rejected Ochoa's claim on the ground that "counsel may have reasonably determined that it would be more effective to respond to the comment in his argument, which he did." *Ochoa*, 2020 WL 593998, at *8. Ochoa has not argued that Clancy's later statement to the California Supreme Court is irreconcilable with the Court of Appeal's interpretation of why Clancy decided not to object. *See generally* Dkt. No. 22.

This Court "cannot say that such a strategic decision would have been objectively unreasonable beyond any possibility for fairminded disagreement." *Demirdjian v. Gipson*, 832 F.3d 1060, 1072-73 (9th Cir. 2016). The Ninth Circuit has "repeatedly held that, absent egregious misstatements, failing to object to error during closing argument falls within the wide range of reasonable assistance." *Id.* at 1073 (cleaned up). But even assuming that the remarks were improper, they fall short of the type of "patent, inflammatory and repeated misconduct" that would be deemed "egregious." *Zapata*, 788 F.3d at 1116. The fact that defense counsel had the opportunity to address the remarks in his closing, and did, is a significant factor in favor of the reasonableness of the state court's determination. *Cf. id.* ("Especially significant is the timing of the [prosecutor's unchallenged] comments, which were made during rebuttal after defense counsel's last opportunity to address the jury.").

### C.   Ground 3(b): Failure to Remove Concerned Jurors

Ochoa says that his counsel was ineffective for not moving to exclude two jurors who expressed concerns about their safety after a verdict. *See* Dkt. No. 22 at m-19.

1    **1.    Background**

2        The California Court of Appeal summarized the relevant details from the trial court

3    proceedings:

4        "The jury began deliberations at the very end of the day on January 4, 2017, deliberating

5        for approximately seven minutes.  When the jury returned the following morning, Juror

6        No. 5 told the court he had learned the previous evening that his wife knew appellant's

7        family from growing up in the same neighborhood, and appellant's father or another

8        relative apparently lived very near Juror No. 5's father-in-law's house.  Juror No. 5

9        expressed some concern about retaliation by appellant's family against his family,

10       although he said it would not affect his decision in the case.  Appellant's trial counsel

11       asked for Juror No. 5 to be removed and the court excused him.

12

13       Before the jury could begin deliberations anew with an alternate, the bailiff informed the

14       court that two jurors indicated they had concerns.  Both were questioned separately by the

15       court.  Juror No. 11 expressed a concern about the presence of the jurors' names on the

16       jury questionnaire, noting there may be 'post-verdict angst that [appellant's] family

17       members or friends may have relative to whatever verdict or potential verdict at this point

18       the jury could come up with.'  The court and appellant's counsel confirmed that appellant

19       did not have a copy of the questionnaires or access to them and the court ordered no

20       identifying information about the jurors be shared with appellant.  With that assurance,

21       Juror No. 11 was satisfied and prepared to continue deliberating.

22

23       Juror No. 12 expressed a concern about 'physical security' when the jury leaves the

24       courtroom after the case is over, in the event of any "bad feelings after the verdict was

25       read.'  The court told Juror No. 12 there would be deputies present who could 'walk people

26       to their cars if they're concerned.'  Juror No. 12 had no further concerns and was able to

27       continue impartial deliberations.  Trial counsel did not seek to excuse either juror."

28   *Ochoa*, 2020 WL 593998, at *7.

United States District Court
Northern District of California

1    The Court of Appeal provided three reasons for rejecting Ochoa's argument that counsel's

2    decision not to seek removal of jurors 11 and 12 constituted ineffective assistance.  It found that

3    "trial counsel could have reasonably concluded that a motion to exclude Jurors Nos. 11 and 12

4    would have been futile as their easily addressed concerns -- about ensuring jury questionnaires

5    were kept from appellant and about physical security immediately after the verdict -- were

6    substantially different from those of Juror No. 5, whose wife personally knew appellant's family

7    and whose father-in-law lived close to appellant's family members."  *Id.* at *8.  Second, the court

8    rejected the notion that the two "jurors' comments [were] necessarily indicative of their decision

9    to convict," observing that "the jury had barely begun deliberations."  *Id.*  Finally, the court found

10   that "trial counsel could reasonably determine that proceeding with these two jurors was

11   preferable to a retrial at which the late-disclosed evidence he had persuaded the trial court to

12   exclude would likely be admissible."  *Id.*

            **2.      Discussion**

14   Ochoa says that a motion to exclude jurors 11 and 12 would have been successful, and that

15   the jurors' concerns about their post-verdict security showed that they were guaranteed to vote

16   guilty.  *See* Dkt. No. 22 at m-19-20.  He reasons, as a result, that any reasonable defense lawyer

17   would have sought to exclude the two guilty votes, bring the number of jurors below twelve --

18   after juror 5 was excused, only one alternate remained -- and secure the best remaining outcome, a

19   mistrial.  *See id.* at m-20.

20   Ochoa falls well short of demonstrating that the California Court of Appeal's decision was

21   unreasonable.  Under California law, a juror may be excused if, upon "good cause shown to the

22   court," he or she "is found to be unable to perform his or her duty."  Cal. Penal Code § 1089.

23   Both jurors expressed reasonable concerns about their safety, were subject to targeted questioning

24   in chambers, and affirmed that they could still serve as fair and impartial jurors.  *See* Dkt. No. 28-8

25   at ECF pp. 139-51 (4RT at 1273-85).  Moreover, both jurors' concerns were less significant and

26   less personalized than those of juror 5, who the trial judge excused out of an "abundance of

27   caution" yet still believed could "continue . . . to be a fair and impartial juror."  *Id.* at ECF p. 134

28   (4RT at 1268).  The record strongly indicates that the judge would have denied a request to

remove jurors 11 and 12, and that such a denial would have been entirely consistent with California law. *See People v. Ramirez*, 13 Cal. 5th 997, 1051-52 (2022). Ochoa speculates that the jurors were unfairly biased against his family and that the trial judge would have needed to remove these jurors upon further questioning, but this idle speculation does not entitle him to federal habeas relief. Consequently, the California Court of Appeal's determination that trial counsel's performance was neither deficient nor prejudicial was objectively reasonable.

That is enough to reject this theory of ineffective assistance. But even assuming that a request to remove the jurors would inevitably have been granted, trial counsel's decision to forego a guaranteed mistrial was not unreasonable. Ochoa says that trial counsel, having heard the jurors' concerns, "must have realized that he no longer had a defense jury." Dkt. No. 42-1 at 8. Ochoa goes so far as to suggest that his lawyer's failure to request exclusion was tantamount to "[s]eeking a guilty verdict." *Id.* at 9. But as the California Court of Appeal noted, the jurors were early in their deliberations, and in fact the deliberation process had yet to start anew after the departure of juror 5. *See Ochoa*, 2020 WL 593998, at *8. Ochoa's trial counsel was well within his discretion to proceed on the premise that a defense verdict could still be obtained.

### D.      Ground 4: Character Witnesses

Ochoa contends that trial counsel Clancy was ineffective for deciding not to call six additional character witnesses to testify at trial. *See* Dkt. No. 22 at m-21.

#### 1.      Background

At trial, Ochoa's counsel presented the testimony of a character witness, probation officer supervisor Lisa Farris. As noted earlier, Farris testified that she was trained to notice whenever a child looked sad or withdrawn, and that in her roughly seven years of knowing Ochoa and Doe, Doe always appeared happy and not withdrawn when she was with Ochoa. *See Ochoa*, 2020 WL 593998, at *2; *see also* Dkt. No. 28-7 at ECF pp. 40-41 (3RT at 934-35). Additionally, there were at least six other potential character witnesses who Ochoa's counsel investigated before trial but who did not testify. "Three knew Doe and appellant for several years through Doe's softball, two knew appellant through work or coaching youth sports and had seen him with Doe a number of times, and one provided daycare for Anthony and Doe for a few months in 2008." *Ochoa*, 2020

United States District Court
Northern District of California

1    WL 593998, at *8.  "All six stated they never saw anything concerning or inappropriate about

2    appellant and Doe's relationship."  *Id.*

3        In state court, Ochoa claimed that trial counsel was deficient in failing to present these six

4    other character witnesses.  The Court of Appeal disagreed, finding that counsel "could have

5    reasonably determined that their testimony would have been cumulative and of little value."  *Id.*

6        In his declaration to the California Supreme Court, Clancy elaborated on his decision not

7    to call the additional character witnesses:

8        "My opinion was that our character witness [*sic*] were weak but might be helpful, if

9        needed.  They were being held in reserve incase [*sic*] Mary Jo Adrian Hackbuth was

10       admissible under some theory for the prosecution.  Mary Jo was a horrible character

11       witness against the defense.  The police had already interviewed her.  The prosecution had

12       already interviewed other negative character witnesses.  Also, some character witnesses

13       that I interviewed turned out to be negative.  A continuance would have given the

14       prosecution time to discover those witnesses.

15

16       I had character witnesses under subpoena or in the hallway outside the trial court, if

17       needed.  In chambers the court was asked by the prosecution if he could ask my character

18       witnesses 'what if you knew' questions.  The judge said that if I called witnesses to non-

19       deviant sexual behavior, he would admit it.  At that moment I realized that the use of these

20       character witnesses had the potential of opening the door to the 'butt incident'.  What was

21       also going through my mind are the cases where a statement of the defendant is excluded

22       for a Miranda violation.  The defendant then uses the exclusion of bad evidence to try to

23       introduce evidence favorable evidence [*sic*] but keep out rebuttal evidence by the

24       prosecution.  Not allowed.  I was afraid if I introduced my weak character witnesses, I

25       might open the door to the butt incident.

26

27       I made a tactical decision that calling the 'weak' character witness was too dangers [*sic*]

28       and could lead to opening the issue of the butt incident which I considered to be the worse

                                                        24

1   evidence [*sic*] against the Defendant.  I had a meeting with my client explaining the huge

2   dangers of opening the issue of the butt incident and my opinion that the character

3   witnesses were weak.  I decided not to call the character witnesses that were outside in the

4   hall. . . .

5

6   This was a very hard call.  It was a choice between two bad options.  I went with what I

7   believed was the better of the two."

8   Dkt. No. 28-24 ¶¶ 34-37.

9          **2.    Discussion**

10         Ochoa dedicates the bulk of his argument on this issue to disputing Clancy's representation

11   that the trial court ruled "that the prosecutor could ask character witnesses about the alleged

12   picture taking incident," Dkt. No. 22 at m-22, and contends that such a ruling would have been

13   unlawful under state law in any event, *see id.* at m-23.  Ochoa says that there was "no reasonable

14   tactical basis for not calling the character witnesses" under these circumstances, and that he was

15   prejudiced because the witnesses would have bolstered his credibility and "[t]he trial was a

16   credibility contest between [Doe] and petitioner."  *Id.* at m-25-26.

17         As the California Court of Appeal determined, Clancy could have reasonably decided that

18   the testimony of six additional character witnesses would have been cumulative and of little value.

19   Clancy's declaration confirms that he viewed the character witnesses as weak.  While "[a]ll six

20   stated they never saw anything concerning or inappropriate about appellant and Doe's

21   relationship," *Ochoa*, 2020 WL 593998, at *8, that would not prove or disprove anything about

22   Doe's allegations about what transpired in private.  And Clancy's fear that the prosecution would

23   question the character witnesses about the picture-taking incident was not entirely unfounded.  *See*

24   *People v. Ramos*, 15 Cal. 4th 1133, 1173 (1997) ("When a defense witness, other than the

25   defendant himself, has testified to the reputation of the accused, the prosecution may inquire of the

26   witness whether he has heard of acts or conduct by the defendant inconsistent with the witness'

27   testimony.  So long as the People have a good faith belief that the acts or conduct about which

28

they wish to inquire actually took place, they may so inquire.") (cleaned up).  Moreover, Ochoa's

failure to address the reasoning underlying the state court's decision precludes relief on this claim.

Even if the Court were to set aside AEDPA deference in the same manner that Ochoa does

throughout his petition, Ochoa's claim would fall short on de novo review.  Ochoa cannot show

that he was prejudiced by Clancy's decision not to call a total of seven character witnesses who

largely knew Ochoa through youth sports or work.  *See, e.g.*, *Matylinsky v. Budge*, 577 F.3d 1083,

1097 (9th Cir. 2009) (finding that a habeas petitioner could not "show prejudice for failure to

present what is most likely cumulative evidence").

### E.       Ground 5:  Expert Testimony re Ochoa's Lack of Sexual Deviance

Ochoa claims that Clancy rendered ineffective assistance by deciding not to investigate or

present the testimony of a "*Stoll* expert" who would have examined him and "determined that his

nature is inconsistent with a child molester's."  Dkt. No. 22 at m-26.

#### 1.       Background

This claim was not presented in Ochoa's direct appeal to the California Court of Appeal.

Instead, Ochoa "presented the report of [forensic psychologist] Dr. Jeremy Coles for the first time

in an appellate habeas corpus petition in 2019."  *Id.* at m-28; *see* Dkt. No. 28-14 at 14.  According

to Ochoa, "Dr. Coles examined petitioner and administered standardized psychological tests.  He

then wrote an unusually favorable opinion that not only concluded that petitioner wasn't a

pedophile, but that petitioner didn't have the psychological characteristics of any sort of sex

offender."  Dkt. No. 22 at m-28.  Dr. Coles' report contains a review of Ochoa's background,

including his education, work, substance use, health, relationship history, and sexual history, and

the results of a "personality assessment inventory" that Dr. Coles administered to Ochoa.  *See*

*generally* Dkt. No. 28-15 at ECF pp. 25-40.  Dr. Coles summarized his findings:

> "[A] review of all of the available evidence indicates that Mr. Ochoa does not possess and
>
> [*sic*] character traits or other psychological features consistent with individuals who
>
> commit sex crimes against children.  Additionally, none of the evidence indicates that he is
>
> a sexually deviant man.  He is not sexually attracted to children.  Beyond the allegations

1    surrounding the controlling offense, there is absolutely nothing about his past, nor his

2    current attitudes, that is consistent with a person that commits sex crimes against children."

3    *Id.* at ECF p. 39.

4         The California Court of Appeal denied Ochoa's state habeas petition without issuing an

5    order to show cause, *see* Dkt. No. 28-19, and it did not discuss the *Stoll* expert issue in its opinion

6    for the direct appeal.  After Ochoa brought a petition for review, and the California Supreme Court

7    solicited a declaration from trial counsel, Clancy made the following remarks on this subject:

8         "I have as part of my data bank a motion for the introduction of Stoll Expert Witness

9         Testimony and Stoll Lay Witness Testimony.

10

11        During my career I have had the opportunity to witness Stoll Expert witnesses cross

12        examined by competent prosecutors.  They have little trouble showing that the 'studies'

13        underlying their opinions are weak at best.  Even though his [*sic*] type of evidence is

14        admissible, I find it to be weak.  During my training seminars I discourage attorney[s] from

15        using this type of evidence.  Prior to becoming an attorney, I was a Chemical Engineer.  A

16        chemical engineer is a combination engineer and scientist.  It has been 50 years since my

17        college training, but I am still perfectly capable of read research and determine [*sic*] if it

18        meets scientific reliability.  This type of evidence does not.

19

20        I have found that Stoll <u>lay</u> witness testimony is more valuable.  The prosecutor's counter is

21        always the same.  'You don't know what he did when he was alone with the "victim" did

22        you?'.  During debriefing of jury's [*sic*] after trial, I have come to the opinion that lay Stoll

23        opinion does not win trials.  What is does is make a juror more comfortable when they

24        have a reasonable doubt based on the evidence.  Comfortable is good.  It overcome[s] their

25        feelings of doing something wrong by voting not guilty.

26

27        The decision for not using a Stoll expert was a tactical decision."

28    Dkt. No. 28-24 ¶¶ 15-18.

United States District Court
Northern District of California

1    The California Supreme Court denied Ochoa's petition for review of his state habeas

2    petition without providing reasons.  *See* Dkt. No. 28-26.

3            **2.      Discussion**

4            The California Supreme Court and Court of Appeal only issued summary denials with

5    respect to this claim.   But AEDPA still "applies under these circumstances."  *Fauber v. Davis*, 43

6    F.4th 987, 999 (9th Cir. 2022).  "Where a state court's decision is unaccompanied by an

7    explanation, the habeas petitioner's burden still must be met by showing there was no reasonable

8    basis for the state court to deny relief."  *Id.* (quoting *Richter*, 562 U.S. at 98).  This Court is

9    required to "determine what arguments or theories . . . could have supported[] the state court's

10   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

11   arguments or theories are inconsistent with the holding in a prior decision of this Court."  *Richter*,

12   562 U.S. at 102.

13           The California Supreme Court could have reasonably determined that Ochoa did not show

14   deficient performance.  "[S]trategic decisions -- including whether to hire an expert -- are entitled

15   to a 'strong presumption' of reasonableness."  *Reeves*, 141 S. Ct. at 2410 (quoting *Richter*, 562

16   U.S. at 104).  "Defense lawyers have 'limited' time and resources, and so must choose from

17   among '"countless"' strategic options."  *Id.* (quoting *Richter*, 562 U.S. at 106-07).  "Such

18   decisions are particularly difficult because certain tactics carry the risk of harming the defense by

19   undermining credibility with the jury or distracting from more important issues."  *Id.* (cleaned up).

20   Contrary to Ochoa's suggestion, the record does not reveal an "arbitrary failure to investigate an

21   applicable psychological defense."  Dkt. No. 22 at m-30.  Clancy's statement to the California

22   Supreme Court reflects that he made a tactical decision not to call a *Stoll* expert, and the trial

23   record shows that Clancy actively contemplated presenting such testimony but ultimately decided

24   against it.  *See* Dkt. No. 28-5 at ECF p. 20 (1RT at 132).  And Ochoa has not shown that this is a

25   case "where the only reasonable and available defense strategy require[d] . . . introduction of

26   expert evidence."  *Richter*, 562 U.S. at 106.  Ochoa has not shown that "*every* fairminded jurist

27   would agree that *every* reasonable lawyer would have made a different decision."  *Reeves*, 141 S.

28   Ct. at 2411 (cleaned up).  He is not entitled to relief on his *Stoll* expert claim.

United States District Court
Northern District of California

As an independent basis for rejecting Ochoa's claim, the California Supreme Court could have reasonably concluded that Ochoa fell short on the prejudice prong. *Stoll* evidence was also at issue in *Brodit v. Cambra*, 350 F.3d 985 (9th Cir. 2003). In that case, the California Court of Appeal confronted a similar claim that trial counsel was ineffective in not presenting *Stoll* testimony, and it decided that "even if the favorable *Stoll* evidence had been admitted, there is no reasonable probability the result of the proceeding would have been different." *Brodit*, 350 F.3d at 994 (cleaned up). "The court reasoned that the subjective opinion of one defense-paid psychologist, based on one 90-minute interview and a few standardized tests, would not have convinced any reasonable juror of the contours of Petitioner's personality, predisposition, or criminal guilt." *Id.* The Ninth Circuit held that the California Court of Appeal "did not apply *Strickland* unreasonably," even though it was a close case that rested "on a swearing contest between the [victim] child and Petitioner," and "[t]here was no eyewitness and there was only minimal physical evidence of abuse." *Id.*

Ochoa suggests that *Brodit* is inapposite because the California Court of Appeal, in this case, did not make a "finding that this court could defer to, since it had neither Dr. Coles' report or any discussion of the report before it in the direct appeal." Dkt. No. 42-1 at 11. But as explained above, Ochoa is mistaken in his view that the state court's summary denial of his claim is entitled to no deference. The reasoning that the California Court of Appeal supplied in *Brodit* could just as readily be attributed to the state court's decision in this case, notwithstanding Ochoa's speculation that the *Stoll* expert report in *Brodit* was "far weaker" than Dr. Coles' report. *Id.*

## F.      Ground 6: Defense's Closing Argument

Ochoa's final standalone claim is that trial counsel's closing argument was "very unusual," that it indicated to the jury that "trial counsel believed that something illicit was going on between petitioner and [Doe]," and that it was ultimately ineffective and damaging to his defense. Dkt. No. 22 at m-32-33.

### 1.      Background

The California Court of Appeal summarized Ochoa's complaints about his trial counsel's closing argument:

> "Appellant targets various matters discussed in counsel's argument:  the conflicting verdicts in O.J. Simpson's criminal and civil cases, which appellant contends suggested counsel believed '"my client is as innocent as O.J. Simpson"'; comments by then-President Clinton about the O.J. Simpson verdicts, which appellant argues would have reminded the jury of President Clinton's narrow definition of 'sexual relations,' thus leading the jury to believe the beyond-a-reasonable-doubt standard was 'legal hair-splitting designed to shield a guilty individual'; an anecdote about counsel's teenage crush on a classmate, which appellant contends suggested 'counsel believed that appellant at least had a lewd intent'; and a song with the refrain 'tell me more,' in which friends ask for details about a romance, which appellant argues suggested that 'something' happened between appellant and Doe even if the details were embellished."

*Ochoa*, 2020 WL 593998, at *9.  The court proceeded to reject this claim of ineffective assistance, finding that Ochoa had not shown that his counsel's performance was deficient:

> "Trial counsel's closing arguments did not indicate he believed appellant was guilty.  To the contrary, counsel argued that Doe fabricated the allegations and that appellant was 'actually innocent.'  While appellant may disagree with some of the examples used by trial counsel to illustrate his argument, trial counsel could have reasonably determined the colorful examples would best keep the jury's attention and ensure they retained his key points."

*Id.*  Clancy's subsequent statement to the California Supreme Court did not elaborate on his approach to closing argument.

### 2.    Discussion

"The right to effective assistance extends to closing arguments."  *Gentry*, 540 U.S. at 5.  "Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage."  *Id.* at 5-6.  "Judicial review of a defense attorney's summation is therefore highly deferential -- and doubly deferential when it is conducted through the lens of federal habeas."  *Id.* at 6.  Against this backdrop, the state court's

30

1    determination that Clancy did not render deficient performance during closing argument was not

2    objectively unreasonable.  Clancy's choice of examples may have been somewhat odd -- he

3    himself acknowledged that he "hate[d]" using the O.J. Simpson example to discuss different

4    burdens of proof, but thought it was the only one that the jurors would "all know about and

5    understand," Dkt. No. 28-8 at ECF p. 46 (1RT at 1180) -- but at no point did he convey that he

6    believed his client was guilty.  That Ochoa's present counsel may disagree with his trial counsel's

7    somewhat colorful approach to closing argument is not a ground for the extraordinary remedy of

8    federal habeas relief.

9          **G.      Ground 7:  Cumulative Error**

10         Ochoa has not identified a single error of constitutional magnitude.  Consequently, his

11   claim of cumulative error must be rejected, as "there can be no accumulation of prejudice

12   amounting to a denial of due process or meeting the *Strickland* standard."  *Lopez v. Allen*, 47 F.4th

13   1040, 1053 (9th Cir. 2022); *see also Demetrulias v. Davis*, 14 F.4th 898, 916 (9th Cir. 2021);

14   *Chandra*, 2022 WL 6144269, at *20.

15   **II.    EVIDENTIARY HEARING**

16         Ochoa has also filed a separate motion for an evidentiary hearing.  Dkt. No. 47.  He

17   identifies the need for a hearing as follows:  "As the amended petition is entirely based on the

18   alleged ineffective assistance of trial counsel, the factual issues would include all factual issues

19   raised in the amended petition, including the credibility of the two major witnesses not called,

20   Anthony Ochoa and the *Stoll* expert Jeremy Coles, Ph.D."  Dkt. No. 47-1 at 2.  Ochoa also

21   requests an opportunity to question trial counsel "about his reasons, if any, for his complained of

22   acts and omissions."  *Id.* at 10.

23         "In deciding whether to grant an evidentiary hearing, a federal court must consider whether

24   such a hearing could enable an applicant to prove the petition's factual allegations, which, if true,

25   would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474

26   (2007); *see also Ochoa*, 50 F.4th at 891.  "[A]n evidentiary hearing is *not* required on issues that

27   can be resolved by reference to the state court record."  *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th

28   Cir. 1998) (emphasis in original).  In this case, an evidentiary hearing is not warranted.  Ochoa

United States District Court
Northern District of California

wants to cross-examine Clancy about every challenged decision that he made during trial, in an effort to undermine his credibility. But Ochoa has not adequately explained how the resolution of the claims in his federal habeas petition depends on Clancy's credibility. The state court record is adequately developed to understand Clancy's decisions at trial, and to assess whether those decisions involved reasonable strategic choices or otherwise amounted to deficient performance. Additionally, Ochoa's request for an evidentiary hearing is properly denied in light of the deferential standards in Section 2254(d). *See Pinholster*, 563 U.S. at 183 ("[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'") (quoting *Landrigan*, 550 U.S. at 474); *see also Fairbank v. Ayers*, 650 F.3d 1243, 1254-55 (9th Cir. 2011).

## CONCLUSION

The petition is denied. The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability (COA). *See* Rules Governing § 2254 Cases, Rule 11(a). A COA is also denied.

The Court may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, *see id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ochoa has not shown a COA is warranted, and so it is denied.

**IT IS SO ORDERED.**

Dated: May 8, 2023

_____
JAMES DONATO
United States District Judge

United States District Court
Northern District of California